**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2948-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MARIANO RODRIGUEZ,

     Defendant-Appellant.

_____

Submitted January 23, 2019 – Decided May 13, 2019

Before Judges Rothstadt and Natali.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 00-04-0396 and 94-06-0638.

Joseph E. Krakora, Public Defender, attorney for appellant (Alison Perrone, Designated Counsel, on the brief).

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (Frank L. Valdinoto, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Mariano Rodriguez appeals from the Law Division's August 7, 2017 denial of his petition for post-conviction relief (PCR) without an evidentiary hearing. In his petition, defendant argued that his plea counsel in 1994 and in 2000 failed to properly advise him of the immigration consequences of his plea. The PCR judge determined that the petition was time–barred and defendant failed to establish a prima facie claim of ineffective assistance of counsel (IAC). For the reasons that follow, we affirm.

In 1994, defendant pled guilty to third-degree possession of controlled dangerous substances (CDS) with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3).[1] Pursuant to his plea agreement with the State, on November 15, 1994, the trial court sentenced him to a non-custodial, probationary sentence.

In 2000, defendant pled guilty to possession of CDS (cocaine) with intent to distribute within 1,000 feet of a school zone, N.J.S.A. 2C:35-7. During the plea hearing, defendant confirmed under oath that he attended college, could read, write, and understand English, he reviewed the plea form with counsel, who answered all of his questions, the form was accurate, and he read and understood it before he signed the completed form. On October 13, 2000, the

---

[1] Neither party has supplied us with a transcript of the 1994 plea hearing.

A-2948-17T2

trial court sentenced defendant in accordance with his plea agreement to a five-year term of imprisonment with thirty months of parole ineligibility. Defendant did not file a direct appeal from either of his convictions or sentences.

At the time defendant pled guilty to the two offenses, he was a Cuban national and not a citizen of the United States. On both plea forms, defendant circled "N/A" in response to question seventeen, which asked: "Do you understand that if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty?"

In 2016 defendant filed his first petition for PCR, claiming he received IAC from his plea counsel in 1994 and 2000. A brief and amended petition were subsequently submitted on his behalf. In his amended petition, he stated that because of the IAC, he was unaware that his 1994 and 2000 convictions could lead to his deportation. According to defendant, plea "counsel gave [him] misinformation and ill-advice concerning the immigration consequences of [his] plea."

Defendant did not state what his attorney said to him about the immigration consequence of his plea. Instead, he certified to the following:

> When I met with my first attorney in 1994, I was not aware that I would be facing any immigration consequences as a result of my guilty plea. If I had

known that I faced additional risks, I would not have pled guilty.

When I met with my trial attorney in 2000, I had specific discussions with my attorney about my background and my citizenship. My attorney was aware that I was born in Cuba and not a U.S. Citizenship [sic]. After speaking with my attorney, I believed that I would not be deported.

If I had known that I was pleading guilty to an aggravated felony I would not have entered a guilty plea to any of these charges. If I had known that my deportation was mandatory, I would have taken my case to trial.

The PCR court considered the parties oral arguments on August 7, 2017. At that hearing, defendant argued that his petition was not time-barred under Rule 3:22-12(a)(1) because he was not advised about deportation consequences. He acknowledged that his case was pre-Padilla v. Kentucky, 559 U.S. 356 (2010) so the issue concerned misadvice of counsel and whether an evidentiary hearing should be granted to determine why counsel selected "N/A" for question seventeen. He noted that on the uniform defendant intake form, he specifically indicated in 1999 that he was not a U.S. citizen.

After considering the parties' arguments, Judge Alberto Rivas denied defendant's petition, placing his reasons on the record. Initially, he found defendant's petition to be time-barred under Rule 3:22-12 because the fact that

deportation policies changed after 1994 and 2000, when Cuban nationals were not actively being deported, did not give rise to a basis for pursuing a PCR claim.

Judge Rivas then considered whether defendant established a reason under State v. Mitchell, 126 N.J. 565, 574 (1992) to relax the Rule's time bar. He noted that the Rule "is not rigid" and the application of its time bar had to be considered in light of "the extent and cause of the delay [in seeking PCR relief,] the prejudice to the State[,] and the importance of the petitioner's claim in determining whether there has been an injustice sufficient to relax the time limits."

The judge found that the first two factors weighed heavily in favor of the State, finding that the extent of the delay was significant, given defendant's indictments were twelve and eighteen years after the Rule's deadline and that it would be "difficult if not impossible" for the State to prosecute the cases given the extreme delay. Turning to defendant's reasons for delaying in filing a petition, the judge found that defendant did not establish any excusable neglect by delaying until his alleged discovery in 2016 that he might be deported based on his 1994 and 2000 convictions.

Judge Rivas weighed defendant's explanation for the delay and the prejudice to the State against defendant's claim that an injustice occurred. At

A-2948-17T2

the outset, the judge found that because defendant was an alien at the time, he could be deported under federal law because he was convicted of aggravated felonies that included "trafficking of a controlled substance." However, the judge noted that Cuban immigrants were treated differently from other aliens because of the strained relations between the United States and Cuba and as such, it was unlikely that defendant would have actually been deported. Citing to State v. Garcia, 320 N.J. Super 32, 35 (App. Div. 1999) and Clark v. Suarez Martinez, 543 U.S. 371, 386 (2004), Judge Rivas stated that "in the late 1990s and in the 2000s, Cuba did not accept deportees . . . ."

Significantly, the judge observed that "defendant [did] not provide any documentation to confirm that deportation proceedings [had] begun against him [and] even if deportation proceedings [had] begun against him because he's Cuban, it's unclear what his future would look like." The judge concluded that it was likely that defendant would not actually be removed from the United States and therefore his discovery of the possibility of his deportation in 2016 did not give rise to an injustice warranting the relaxation of the time bar.

Judge Rivas also addressed the merits of defendant's IAC claims as to both pleas. Beginning with defendant's 1994 plea, the judge observed that defendant's certification filed in support of his petition did not contain a

statement that defendant's plea counsel misadvised him about any immigration consequences of his plea. The only evidence defendant relied upon was that his answer to question seventeen on the plea form was "N/A." Citing to State v. Gaitan, 209 N.J. 339 (2012), the judge concluded that defendant's proof did not satisfy the pre-2010 requirement that defendant must come forward with evidence that counsel was ineffective by providing false or misleading information regarding deportation consequences of a guilty plea.

Judge Rivas also distinguished defendant's petition from that in Garcia where a Cuban defendant circled "N/A" on question seventeen based on an attorney's affirmative mis-advice to his client. In that case, we found that the defendant established a prima facie case of misinformation because he selected "N/A" to question seventeen based on his attorney's advice that he would not be deported. Garcia, 320 N.J. Super. at 336, 340. Here, Judge Rivas concluded that defendant did not offer similar evidence as defendant only stated that he was not aware he could face immigration consequences without identifying his plea counsel's statements about his plea's immigration consequences. Applying that evidence to the requirements under Strickland v. Washington, 466 U.S. 668 (1984) for establishing a prima facie claim of IAC, the judge concluded that defendant failed to meet his burden.

7

The judge reached the same conclusion as to defendant's 2000 plea. He observed that the same standards applied in 2000 as in 1994 relating to an attorney's obligation not to misadvise his or her client. He also noted that defendant informed counsel that he was not a U.S. Citizen but at the time, attorneys were not required to advise their clients of collateral consequences, including those related to immigration. The judge again concluded that defendant failed to allege enough facts to establish a prima facie case for IAC. This appeal followed.

Defendant presents the following issues for our consideration in his appeal.

> POINT I
>
> THE TRIAL COURT ERRED IN CONCLUDING THAT DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WAS TIME BARRED BECAUSE DEFENDANT'S FAILURE TO FILE HIS PETITION WITHIN FIVE YEARS OF HIS CONVICTION WAS DUE TO EXCUSABLE NEGLECT AND ENFORCEMENT OF THE TIME BAR WOULD RESULT IN A FUNDAMENTAL INJUSTICE.
>
> POINT II
>
> DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE IN

A-2948-17T2

MISADVISING HIM ON THE DEPORTATION
CONSEQUENCES OF HIS GUILTY PLEA.

In support of his contentions, defendant cites to <u>Mitchell</u> and argues that that time limit under <u>Rule</u> 3:22-12 is not absolute.  He argues that we should reverse because Judge Rivas rigidly enforced the time bar, which resulted in defendant being denied the opportunity to litigate constitutional claims.  Defendant maintains that despite the significant filing delay, there was excusable neglect because he was not properly informed about immigration consequences.  He adds that he filed his PCR petition as soon as he became aware about the misadvice and argues that enforcing the time bar would constitute a fundamental injustice.[2]

Moreover, defendant distinguishes his case from <u>State v. Brewster</u>, 429 N.J. Super. 387 (App. Div. 2013).  There, we rejected the <u>Rule</u>'s time bar where a defendant filed his PCR petition almost twelve years after his conviction, asserting that he was entitled to relief because he circled "yes" to question seventeen on the plea form and consulted an attorney three years prior to the

_____

[2]  In his PCR brief, defendant asserts that he learned about his possible deportation in 2016 when federal authorities began deportation proceedings.  He cites to the same statement made by PCR counsel in the brief filed on his behalf in support of his petition.  However, there is no evidence in the record to support the allegation that federal authorities began deportation proceedings at any time.

A-2948-17T2

filing who advised that the conviction could be problematic. Brewster, 429 N.J. Super. at 391-401.

We are not persuaded by any of these arguments and affirm substantially for the reasons expressed by Judge Rivas in his comprehensive oral decision. We add only the following comments.

The standard for determining whether counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland and adopted by our Supreme Court in State v. Fritz, l05 N.J. 42 (l987). In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-prong test of establishing that: (l) counsel's performance was deficient and he or she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694.

The Strickland two-prong analysis applies equally to convictions after a trial or after a defendant pleads guilty. In the context of a PCR petition challenging a guilty plea, the second prong is satisfied when a defendant

establishes "that there is a reasonable probability that, but for counsel's errors [he or she] would not have pled guilty and would have insisted on going to trial." Gaitan, 209 N.J. at 351 (alteration in original) (quoting State v. Nunez-Valdez, 200 N.J. 129, 139 (2009)). A defendant who claims ineffective assistance of plea counsel must also show that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 559 U.S. at 372; see also State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011).

Here, there is no evidence that "defense counsel . . . assure[d] defendant that he would not be deported. . . . [and d]efendant has not shown . . . [that he received any] advice [that] deviated from the 'prevailing professional norms' in 199[4 or 2000] for a criminal defense attorney." Brewster, 429 N.J. Super. at 396, (quoting Padilla, 559 U.S. at 366-67); see also Garcia, 320 N.J. Super. at 336 (addressing claim of IAC arising from "defense attorney advis[ing the defendant] that despite his status in this country, he would not be subject to deportation and that's why 'N/A' was circled on the plea form"). Also, defendant has not alleged that he did not understand the plea forms or failed to review them with counsel. Cf. State v. Atuna, 446 N.J. Super. 595, 602-03 (App. Div. 2016) (finding IAC even though plea counsel did not misadvise about immigration

consequences because defendant did not understand English and counsel "fail[ed] to have defendant review every question on the plea form").

Moreover, under the circumstances presented by defendant, there is no evidence that had he received advice about the possibility of being deported, it would have been rational for him to forego the plea offers and face trial and the risk of a 1994 sentence to prison or more time, under the extended term, as part of his 2000 sentence. See Lee v. United States, 137 S. Ct. 1958, 1967 (2017) ("[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences").

We therefore conclude from our de novo review that defendant failed to establish a prima facie showing of IAC and Judge Rivas correctly concluded that an evidentiary hearing was not warranted. See State v. Preciose, 129 N.J. 451, 462 (1992).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12                                                          A-2948-17T2